# SCHEDULE  A

394/PM

DIEFFENBACH, WITT & BIRCHBY

FILED Oct 06, 2011   E

Attorneys for Plaintiff
West 100 Century Road
P.O. Box 9
Paramus, New Jersey  07653-0009
Telephone No. (201) 967-1217

| | |
|---|---|
| HUDSON CITY SAVINGS BANK, a federally chartered savings bank, | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | CHANCERY DIVISION |
| vs. | BERGEN COUNTY |
| WILLIAM M. GAEL A/K/A WILLIAM GAEL, UNMARRIED; VALLEY NATIONAL BANK; SHELTER BAY CLUB TOWNHOME ASSOCIATION, INC.; BERMAN SAUTER RECORD & JARDIM PC F/K/A RAMSEY BERMAN PC; STATE OF NEW JERSEY; | DOCKET NO. F-55905-09 Civil Action |
| | FINAL JUDGMENT |
| Defendant(s) | |

Upon application of the Plaintiff, and it appearing that

Summons, Complaint, and Amended Complaint has been duly issued and

returned served on all the Defendant(s) except Notice and Amended

Complaint acknowledged for the State of New Jersey; the default of

all Defendant(s) having been entered except the Defendants, Valley

National Bank; Shelter Bay Club Townhome Association, Inc.; and

Berman Sauter Record & Jardim PC f/k/a Ramsey Berman PC, who filed

Answers which do not dispute the priority of the Plaintiff's

Mortgage; the Plaintiff's Note and Mortgage; the Note and Mortgage

of Valley National Bank; ~~and the Amended Claim of Lien of Shelter~~

~~Bay Club Townhome Association, Inc., all having been presented and~~

~~marked as Exhibits by the Court; and the Judgment of Berman Sauter~~

- 1 -

~~Record & Jardim PC f/k/a Ramsey Berman PC, being a matter of~~
~~record in the Court;~~

And it appearing from the Affidavits filed herein that there
is due to the Plaintiff the sum of $635,232.53 on its Mortgage
described in the Amended Complaint; it appearing there is due the
Defendant, Valley National Bank, the sum of $64,809.38 on its
Mortgage described in the Amended Complaint; ~~it appearing there is~~
~~due the Defendant, Shelter Bay Club Townhome Association, Inc.,~~
~~the sum of $56,738.35 on its Amended Claim of Lien described in~~
~~the Amended Complaint; and it appearing there is due the~~
~~Defendant, Berman Sauter Record & Jardim PC f/k/a Ramsey Berman~~
~~PC, the sum of $84,396.60 on its Judgment described in the Amended~~
~~Complaint,~~ and sufficient cause appearing;

It is on this __6th__ day of __October__, 20__11__,
ORDERED and ADJUDGED that the Plaintiff is entitled to have the
sum of $635,232.53 together with the contract interest thereon to
be computed at the rate of Three and One-Eighth (3 1/8%) percent
on $589,816.25, the principal sum in default plus advances from
June 15, 2011, to date of Final Judgment and lawful interest
thereafter on the total sum due Plaintiff together with costs of
this action to be taxed including a counsel fee of __$6,502.33__
raised and paid out of the mortgaged premises described in the
Amended Complaint; that secondly, the Defendant, Valley National
Bank, is entitled to have the sum of $64,809.38 together with
lawful interest thereon to be computed from July 2, 2011, ~~together~~
~~with its costs of suit to be taxed,~~ raised and paid out of the
mortgaged premises described in the Amended Complaint; ~~that~~

- 2 -

~~thirdly, the Defendant, Shelter Bay Club Townhome Association, Inc., is entitled to have the sum of $56,738.35 together with lawful interest thereon to be computed from June 30, 2011, together with its costs of suit to be taxed, raised and paid out of the mortgaged premises described in the Amended Complaint; and that fourthly, the Defendant, Berman Sauter Record & Jardim PC f/k/a Ramsey Berman PC, is entitled to have the sum of $84,396.60 together with lawful interest thereon to be computed from July 25, 2011, together with its costs of suit to be taxed, raised and paid out of the mortgaged premises described in the Amended Complaint;~~

And it is further ORDERED and ADJUDGED that so much of the said mortgaged premises as will be sufficient to raise and satisfy the Mortgage, interest, and costs of the Plaintiff; the Mortgage, interest, ~~and costs~~ of the Defendant, Valley National Bank; ~~the Amended Claim of Lien of the Defendant, Shelter Bay Club Townhome Association, Inc.; and the Judgment of Berman Sauter Record & Jardim PC f/k/a Ramsey Berman PC,~~ be sold and that an Execution do issue for that purpose to the Sheriff of Bergen County, commanding him to make sale, according to law, of the said mortgaged premises described in said Amended Complaint, and out of the monies arising from sale he pay the Plaintiff's debt, with interest thereon and costs as aforesaid, to the Plaintiff, or its attorney; in the second place, he pay the Defendant's, Valley National Bank, debt, with interest thereon ~~and costs as aforesaid,~~ to the Defendant, or its attorney; ~~in the third place, he pay the Defendant's, Shelter Bay Club Townhome Association, Inc., debt, with interest thereon and costs as aforesaid, to the Defendant, or its attorney; and in~~

- 3 -

the fourth place, ~~he pay the Defendant's, Berman Sauter Record &
Jardim PC f/k/a Ramsey Berman PC, debt, with interest thereon and
costs as aforesaid, to the Defendant, or its attorney;~~ and that in
case there is a surplus remaining after said sale that such
surplus be brought into Court to abide the further order of the
Court and that the Sheriff make his report of the said sale as
required by the rules of this Court;

And it is further ORDERED and ADJUGED that all of the
Defendants to this action and each of them stand absolutely
debarred and foreclosed of and from all equity of redemption of,
in and to so much of the said mortgaged premises as shall be sold
as aforesaid by virtue of this judgment;

And it is further ORDERED that the Plaintiff and any
purchaser under the foreclosure sale duly recover against the
Defendant, William M. Gael a/k/a William Gael, unmarried, and all
parties holding by, through or claiming under them or any of them,
possession of the premises mentioned and described in the Amended
Complaint, with the appurtenances and that a writ of possession
issue thereon except that this judgment shall not affect the
rights of any person protected by the New Jersey Tenant Anti-
Eviction Act (N.J.S.A. 2A:18-61.1 et seq.), or the limited priority rights for the
aggregate customary condominium assessment for the six month period prior to the recording of any
association lien as allowed by N.J.S.A. 46:8B-21.

*Mary C. Jacobson, P.J.Ch.*
MARY C. JACOBSON, P.J.Ch.

Respectfully Recommended
R. 1:34-6 OFFICE OF FORECLOSURE

- 4 -

# SCHEDULE  B

DEC 2 7 2012

## APPRAISAL OF REAL PROPERTY



**LOCATED AT**
1225 River Rd #4D
Edgewater, NJ 07020
Block: 25   Lot: 3   C: 004D

**FOR**
Hudson City Savings Bank
80 West Century Rd
Paramus, NJ 07652

**AS OF**
12/15/2012

**BY**
Loeb Appraisal Services, Inc.
18-06 Hunter Pl
Fair Lawn, NJ 07410

## Exterior-Only Inspection Individual Condominium Unit Appraisal Report    File # L12846

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | |
|---|---|---|
| Property Address 1225 River Rd | Unit # 4D | City Edgewater | State NJ | Zip Code 07020-1459 |

Borrower Gael, William M.    Owner of Public Record Gael, William M.    County Bergen

Legal Description Block: 25  Lot: 3  C: 004D

Assessor's Parcel # 13-00025-0000-00003-0000-C-004D    Tax Year 2012    R.E. Taxes $ 14,397.80

Project Name Shelter Bay Club    Phase # 1    Map Reference Hagstrom    Census Tract 0130.02

Occupant ☐ Owner ☐ Tenant ☐ Vacant    Special Assessments $ N/A    HOA $ 1,400.00 ☐ per year ☒ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)    NOTE: occupancy of the subject is unknown

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Estimate fair market value for bankruptcy purposes

Lender/Client Hudson City Savings Bank    Address 80 West Century Rd, Paramus, NJ 07652

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). New Jersey MLS #1144608; List Price: $1,489,000; List Date: 12/13/2011; Expiration Date: 12/13/2012; Days on the Market: 367).

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. **Not applicable**

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.    N/A    N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | Condominium Unit Housing Trends | | | Condominium Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE | AGE | One-Unit | 10 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | $ (000) | (yrs) | 2-4 Unit | 20 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 100 Low | 2 | Multi-Family | 5 % |
| Neighborhood Boundaries   Neighborhood boundaries: To the North: Municipal boundary; To the South: | | | | | 2,000 High | 50 | Commercial | 5 % |
| Municipal boundary; To the West: Municipal boundary; To the East: Municipal boundary. | | | | | 500 Pred. | 20+ | Other condo | 60 % |

Neighborhood Description

**Please see addendum for comments regarding "Neighborhood".**

Market Conditions (including support for the above conclusions)    Marketing time is typically between 90 to 180 days for properties listed for effective asking prices. Property values began to soften in the beginning of 2006 and have continued to soften through the end of last year. Current research revealed that the "oversupply" of the recent past has abated and that property values were generally stable as of the effective date of the appraisal.

Topography Level    Size Common land only    Density Moderate    View GWB & Hudson River

Specific Zoning Classification PR-3 / Multi-Family Residential    Zoning Description Condominiums Permitted

Zoning Compliance ☒ Legal ☐ Legal Nonconforming – Do the zoning regulations permit rebuilding to current density? ☒ Yes ☐ No
☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | ☐ | Street Macadam | ☒ | ☐ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | ☐ | Alley N/A | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X    FEMA Map # 34003C0278G    FEMA Map Date 9/30/2005

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

Typical condo easements present have no adverse affect on the subject's value and/or marketability. The subject development's location in flood zone "AE" is not uncommon for waterfront developments throughout the area and is accepted by the market.

Data source(s) for project information    MANAGEMENT COMPANY: RCP Management Group (phone: 201-791-4088)

Project Description ☐ Detached ☒ Row or Townhouse ☐ Garden ☐ Mid-Rise ☐ High-Rise ☐ Other (describe)

| General Description | General Description | Subject Phase | If Project Completed | If Project Incomplete |
|---|---|---|---|---|
| # of Stories 3 | Exterior Walls Stucco | # of Units 60 | # of Phases 1 | # of Planned Phases -- |
| # of Elevators unit dependent | Roof Surface Asph.Sh | # of Units Completed 60 | # of Units 60 | # of Planned Units -- |
| ☒ Existing ☐ Proposed | Total # of Parking 75 | # of Units For Sale 1 | # of Units for Sale 1 | # of Units for Sale -- |
| ☐ Under Construction | Ratio (spaces/units) 1.25 | # of Units Sold 60 | # of Units Sold 60 | # of Units Sold -- |
| Year Built 1984+/- | Type gar.opn | # of Units Rented 7 | # of Units Rented 7 | # of Units Rented -- |
| Effective Age 10-15 | Guest Parking open | # of Owner Occupied Units 53 | # of Owner Occupied Units 53 | # of Owner Occupied Units -- |

Project Primary Occupancy ☒ Principle Residence ☐ Second Home or Recreational ☐ Tenant

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No

Management Group - ☐ Homeowners' Association ☐ Developer ☒ Management Agent - Provide name of management company.    MANAGEMENT COMPANY: RCP Management Group (phone: 201-791-4088)

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project? ☐ Yes ☒ No  If Yes, Describe

Was the project created by the conversion of existing building(s) into a condominium? ☐ Yes ☒ No  If Yes, describe the original use and date of conversion.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)? ☒ Yes ☐ No  If No, describe

Is there any commercial space in the project? ☐ Yes ☒ No  If Yes, describe and indicate the overall percentage of the commercial space.

Freddie Mac Form 466 March 2005    Page 1 of 6    Fannie Mae Form 1075 March 2005

Form 1075 - "TOTAL 2011" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Exterior-Only Inspection Individual Condominium Unit Appraisal Report   File # L12846

Describe the condition of the project and quality of construction   The quality of construction, unit mix, and appeal to market are all considered average.

Describe the common elements and recreational facilities.   24-Hr Security Gate, Built/in Pool, Tennis Courts, and Common grounds only.

Are any common elements leased to or by the Homeowners' Association?   ☐ Yes  ☒ No  If Yes, describe the rental terms and options.

Is the project subject to a ground rent?   ☐ Yes  ☒ No  If Yes, $ _____ per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type?   ☒ Yes  ☐ No  If No, describe and comment on the effect on value and marketability.

I ☐ did  ☒ did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.   The appraiser was not provided with the budget.  However, it should be noted that the appraisers are not qualified to review budgets, reserves, or projections of any sort.  If there is any further concern, a qualified professional should be consulted.

Are there any other fees (other than regular HOA charges) for the use of the project facilities?   ☐ Yes  ☒ No  If Yes, report the charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears   ☐ High  ☒ Average  ☐ Low  If High or Low, describe

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?
☐ Yes  ☒ No  If Yes, describe and explain the effect on value and marketability.

Unit Charge $ 1,400.00  per month X 12 = $ 16,800.00  per year   Annual assessment charge per year per square feet of gross living area = $   4.20

Utilities included in the unit monthly assessment   ☐ None  ☐ Heat  ☐ Air Conditioning  ☐ Electricity  ☐ Gas  ☒ Water  ☒ Sewer  ☐ Cable  ☐ Other
Source(s) used for physical characteristics of property   ☐ Previous Appraisal Files  ☐ MLS  ☒ Assessment and Tax Records  ☐ Prior Inspection  ☐ Property Owner
☐ Other (describe)   Data Source for Gross Living Area

| General Description | Amenities | Appliances | Car Storage |
|---|---|---|---|
| Floor #   2 & 3 | ☒ Fireplace(s) #   1 | ☒ Refrigerator | ☐ None |
| # of Levels   2+w/o bsmt. | ☐ WoodStove(s) # | ☒ Range/Oven | ☒ Garage  ☐ Covered  ☐ Open |
| Heating Type   Fha   Fuel Gas | ☐ Deck/Patio | ☐ Disp  ☒ Microwave | # of Cars   2-car tandem |
| ☒ Central AC  ☐ Individual AC | ☒ Porch/Balcony   3-blcny | ☒ Dishwasher | ☐ Assigned  ☒ Owned |
| ☐ Other (describe) | ☒ Other   Elvtr. | ☒ Washer/Dryer | Parking Space #   N/A |

Finished area above grade contains:   6  Rooms   2  Bedrooms   2.5  Bath(s)   4,000  Square Feet of Gross Living Area Above Grade
Are the heating and cooling for the individual units separately metered?   ☒ Yes  ☐ No  If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)   Additional features include: elevator, 3-balconies, central a/c, and finished basement (one finished room, two full baths, and a laundry area).  Non-realty items were not considered in the final estimate of value.
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   The subject is a duplex condominium unit (plus a loft area over the master bedroom) containing 4,000 sf as per the Tax Assessor and checked for reasonableness based upon a review of the subject's floorplan.  Since this appraiser has not gained interior access and has performed an exterior observation only, the appraiser must assume average interior condition.  A review of the subject's prior MLS listing and a discussion with the former listing agent revealed that the subject also contained a finished basement with two full bath and a finished room.  The former listing agent also commented that the subject unit was originally a three bedroom unit which was converted into a two bedroom unit by removal of one of the bedrooms.
Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   ☐ Yes  ☒ No  If Yes, describe
None apparent from an exterior observation.  The appraiser reiterates that no interior access was gained.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   ☒ Yes  ☐ No  If No, describe

I ☒ did  ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research  ☐ did  ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)   New Jersey MLS & WEBSITE: www.njactb.org & WEBSITE: www.vitalgov.net
My research  ☐ did  ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)   New Jersey MLS & WEBSITE: www.njactb.org  & WEBSITE: www.vitalgov.net
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | Not sold in the 3 yrs prior to | Not sold in the year prior to | Not sold in the year prior to | Not sold in the year prior to |
| Price of Prior Sale/Transfer | effective date of the apprsl. | date of sale in the appraisal | date of sale in the appraisal | date of sale in the appraisal |
| Data Source(s) | Owner, www.njactb.org | www.njactb.org | www.njactb.org | www.njactb.org |
| Effective Date of Data Source(s) | Current - 12/15/2012 | November 2012 | November 2012 | November 2012 |

Analysis of prior sale or transfer history of the subject property and comparable sales.   The appraiser did not find any evidence that the subject had been sold within the three years prior to the effective date of the appraisal   The appraiser found no evidence that any of the comparables had been sold within the one year period prior to the closing date utilized in the Market Approach adjustment grid above.

Freddie Mac Form 466 March 2005   Page 2 of 6   Fannie Mae Form 1075 March 2005

Form 1075 - "TOTAL 2011" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior-Only Inspection Individual Condominium Unit Appraisal Report**   File # L12846

| | | | |
|---|---|---|---|
| There are | 5 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 990,000 | to $ 1,250,000 |
| There are | 4 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 560,000 | to $ 1,170,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 1225 River Rd #4D Edgewater, NJ 07020-1459 | 1225 River Rd #13A Edgewater, NJ 07020 | | 1225 River Rd #1A Edgewater, NJ 07020 | | 10 Moorings Ln Edgewater, NJ 07020 | |
| Project Name and Phase | Shelter Bay Club Phase 1 | Shelter Bay Club Phase 1 | | Shelter Bay Club Phase 1 | | The Moorings Phase 1 | |
| Proximity to Subject | | Same development | | Same development | | 0.20 miles NE | |
| Sale Price | $ N/A | | $ 689,500 | | $ 560,000 | | $ 950,000 |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 287.29 sq. ft. | | $ 329.41 sq. ft. | | $ 284.35 sq. ft. | |
| Data Source(s) | | New Jersey MLS #1221329 | | New Jersey MLS #1130376 | | New Jersey MLS #1138851 | |
| Verification Source(s) | | www.njactb.org   Lp=$699,000 | | www.njactb.org   Lp=$588,000 | | www.njactb.org   Lp=$1,050,000 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | AdjMtg Dom:15 U/C:06/22/2012 | | AdjMtg Dom: 7 U/C:08/09/2011 | | AdjMtg Dom: 3 U/C:10/18/2011 | |
| Date of Sale/Time | | SD=08/20/2012 | | SD=01/19/2012 | | SD=02/29/2012 | |
| Location | Avg-Good | Similar | | Similar | | Similar | |
| Leasehold/Fee Simple | Fee Simple | Fee simple | | Fee simple | | Fee simple | |
| HOA Mo. Assessment | $1,400.00 | $989.40 | | $741.66 | | $243.00 | |
| Common Elements and Rec. Facilities | Sec.Gate, Pool, TnCts,ComGrnd | Sec Gte, Pool, TnCts,ComGrnd | | Sec.Gte, Pool, TnCts,ComGrnd | | Common land only. | +10,000 |
| Floor Location | 2nd & 3rd floor | 1st floor | | 1st floor | | 1st, 2nd & 3rd | |
| View | Good | Similar | | Similar | | Similar | |
| Design (Style) | Duplex/Avg-Gd | Simplex/Inferior | +34,475 | Simplex/Inferior | +28,000 | Twnhs/Superior | -47,500 |
| Quality of Construction | Avg-Good | Avg-Good | | Avg-Good | | Superior   -5% | -47,500 |
| Actual Age | 28 yrs+/- | 23 yrs+/- | | 28 yrs +/- | | 1 yr Eff new | |
| Condition | Average | Similar | | Similar | | Superior   -5% | -47,500 |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 6 | 2 | 2.5 | 5 | 2 | 2.5 | 5 | 2 | 2.5 | 7 | 3 | 3.5 | -15,000 |
| Gross Living Area | 4,000 sq. ft. | 2,400 sq. ft. | +240,000 | 1,700 sq. ft. | +345,000 | 3,341 sq. ft. | +98,850 |
| Basement & Finished | Partial | Partial | | Partial | | None | +15,000 |
| Rooms Below Grade | Finish w/2-baths | Finish w/1-bath | +10,000 | Finish no bath | +20,000 | None | +25,000 |
| Functional Utility | 2-Bedroom | 2-Bedroom | | 2-Bedroom | | 3-Bedroom | -25,000 |
| Heating/Cooling | Fha / Cac | Fha / Cac | | Fha / Cac | | Fha / Cac | |
| Energy Efficient Items | None noted | None noted | | None noted | | None noted | |
| Garage/Carport | 2-car tandem | 2-car tandem | | 2-car tandem | | 2-car garage | -10,000 |
| Porch/Patio/Deck | 3-Balconies | 3-Balconies | | 3-Balconies | | 1-Blcny,Deck,Pt | |
| Amenities: | 1-Fireplace | 1-Fireplace | | 1-Fireplace | | 1-Fireplace | |
| Amenities: | Elevator | None | +15,000 | None | +15,000 | Elevator | |
| Other: | None | None | | None | | None | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 299,475 | ☒ + ☐ - | $ 408,000 | ☐ + ☒ - | $ -43,650 |
| Adjusted Sale Price of Comparables | | Net Adj. 43.4 % Gross Adj. 43.4 % | $ 988,975 | Net Adj. 72.9 % Gross Adj. 72.9 % | $ 968,000 | Net Adj. 4.6 % Gross Adj. 35.9 % | $ 906,350 |

Summary of Sales Comparison Approach

**Please see addendum for comments regarding "Sales Comparison Approach".**

Indicated Value by Sales Comparison Approach $   950,000

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| | | | | |
|---|---|---|---|---|
| Estimated Monthly Market Rent $ | N/A | X Gross Rent Multiplier | N/A | = $ N/A   Indicated Value by Income Approach |

Summary of Income Approach (excluding support for market rent and GRM)   Condo units in the area are typically owner occupied and not utilized as rentals; therefore, there is limited rental data. Consequently, the Income Approach is not applicable and was not considered.

Indicated Value by: Sales Comparison Approach $   950,000   Income Approach (if developed) $   N/A

All weight is given to the Sales Comparison Approach as it reflects the actual activities of buyers and sellers in the marketplace; and is, therefore, considered the least subjective and most reliable indicator of market value. Income Approach not utilized due to the shortage of one family rental data in this marketplace. Cost Approach not utilized due to the subjectivity in estimating land value and accrued depreciation.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: This appraisal is being made "as-is", with no conditions placed upon the appraisal.   No further inspections are required.

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $   950,000 , as of   12/15/2012 , which is the date of the exterior inspection and the effective date of this appraisal.

Freddie Mac Form 466 March 2005   Page 3 of 6   Fannie Mae Form 1075 March 2005

Form 1075 - "TOTAL 2011" appraisal software by a la mode, inc. - 1-800-ALAMODE

### Exterior-Only Inspection Individual Condominium Unit Appraisal Report    File # L12846

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:   The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE:   The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:   The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:   The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:   The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Exterior-Only Inspection Individual Condominium Unit Appraisal Report   File # L12846

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I have performed a visual inspection of the exterior areas of the subject property from at least the street. I have reported the condition of the improvements in factual, specific terms. I have identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

### Exterior-Only Inspection Individual Condominium Unit Appraisal Report   File # L12846

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:   The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Donald A. Castricone | Name  Peter F. Loeb |
| Company Name  Loeb Appraisal Services, Inc. | Company Name  Loeb Appraisal Services, Inc. |
| Company Address   18-06 Hunter Pl, Fair Lawn, NJ 07410 | Company Address   18-06 Hunter Pl, Fair Lawn, NJ 07401 |
| Telephone Number   201-475-8006 | Telephone Number   201-475-8006 |
| Email Address   donald@loebappraisals.com | Email Address   peter@loebappraisals.com |
| Date of Signature and Report   12/26/2012 | Date of Signature   12/26/2012 |
| Effective Date of Appraisal   1219/2012 | State Certification #   42RC00144600 |
| State Certification # | or State License # |
| or State License #   42RA00087400 | State  NJ |
| or Other | Expiration Date of Certification or License   12/31/2013 |
| State  NJ | |
| Expiration Date of Certification or License   12/31/2013 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☒ Did not inspect subject property |
| 1225 River Rd #4D | ☐ Did inspect exterior of subject property from street |
| Edgewater, NJ 07020-1459 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $   950,000 | |
| LENDER/CLIENT | COMPARABLE SALES |
| Name  N/A | |
| Company Name   Hudson City Savings Bank | ☒ Did not inspect exterior of comparable sales from street |
| Company Address   80 West Century Rd, Paramus, NJ 07652 | ☐ Did inspect exterior of comparable sales from street |
| | Date of Inspection |
| Email Address   appraisal@hcsbnj.com | |

Freddie Mac Form 466 March 2005                     Page 6 of 6                     Fannie Mae Form 1075 March 2005

## Supplemental Addendum

File No. L12846

| Borrower/Client | Gaiel, William M. | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1225 River Rd #4D | | | | | |
| City | Edgewater | County | Bergen | State | NJ | Zip Code 07020-1459 |
| Lender | Hudson City Savings Bank | | | | | |

### SCOPE OF THE APPRAISAL

The scope of the appraisal includes an exterior observation only of the subject property, collecting, verifying and analyzing pertinent data, considering market trends, developing an opinion of the subjects market value and communicating the findings in this Summary Appraisal Report. The appraisal has been developed utilizing the Sales Comparison Analysis which most accurately reflect the actions of the typical buyers and sellers in the market place. The Cost and Income Approach have been excluded for this assignment as these approaches were not applicable to develop a credible opinion of market value.

### INTENDED USER

The intended user of the appraisal report is Hudson City Savings Bank and-or affiliates.

### INTENDED USE OF THE APPRAISAL

The intended use of this appraisal is for loan underwriting and-or credit decisions by Hudson City Savings Bank and-or affiliates.  No additional intended users are identified by this appraiser

### ANALYSIS OF PRIOR LISTINGS OR SALES WITHIN THE THREE YEARS PRIOR TO THE EFFECTIVE DATE OF THE APPRAISAL

A search of the New Jersey MLS revealed that the subject had been recently listed for sale in the New Jersey MLS and that this recent listing had expired only one day prior to the effective date of this appraisal. The following is an MLS history for the three years prior to the effective date of the appraisal

| MLS # | Stat | Hist | Address | Price | Status Date | Reported Date |
|---|---|---|---|---|---|---|
| 1144608 | X | ACT | 1225 RIVER RD | $1,674,000 | 12/13/2011 | 12/13/2011 |
| | | PCH | 1225 RIVER RD | $1,489,000 | 2/18/2012 | 2/18/2012 |
| | | ACT* | 1225 RIVER RD | $1,489,000 | 6/21/2012 | 6/21/2012 |
| | | U/C | 1225 RIVER RD | $1,489,000 | 8/1/2012 | 8/1/2012 |
| | | BOM | 1225 RIVER RD | $1,489,000 | 12/10/2012 | 12/10/2012 |
| | | EXP | 1225 RIVER RD | $1,489,000 | 12/14/2012 | 12/14/2012 |

### NEIGHBORHOOD

The subject is located in a mid-rise condominium development entitled "Shelter Bay Club".  This development was originally constructed circa 1984  and contains a total of 60 units as per the management company.  The units in the subject development enjoy varying views of the Hudson River, New York City skyline, and George Washington Bridge.  The surrounding neighborhood contains a variety of land uses including: single families, 2-4 families, additional condominium complexes, rental apartments, and several small strip malls. This property mix is typical to this area and is well accepted by the market with no adverse affect on neighborhood's appeal and/or marketability. Neighborhood analysis revealed that the properties throughout the area appear well maintained  All essential services are located within a few minutes by auto. The commercial properties typically represent retail shopping and essential services generally located along the busy streets in the area.  These limited commercial properties are sufficiently buffered from the subject and have no adverse affect on value and/or marketability  Several highways including, the New Jersey Turnpike, Route 80 and Route 46, are located within a few minutes and provides convenient access to several additional major highways.  The subject complex enjoys close proximity to the George Washington Bridge, which is located within a few minutes by auto, and provides convenient commuter access to nearby New York City.  Future appeal and marketability of the neighborhood and the subject development appear average.

## Supplemental Addendum

| | | File No. L12846 |
|---|---|---|
| Borrower/Client | Gael, William M. | |
| Property Address | 1225 River Rd #4D | |
| City | Edgewater | County Bergen | State NJ | Zip Code 07020-1459 |
| Lender | Hudson City Savings Bank | |

### SALES COMPARISON APPROACH

All sales closed. Comparables #1 and #2 are both located in the subject's immediate development and are the last known MLS sales in the 2011 and the 2012 marketplace. Comparable #3 is located in a competitive development entitled "The Moorings" also located along the Hudson River waterfront. The shortage of sales in the subject development is due to market resistance from recent flooding in the subject development during "Hurricane Sandy" and also due to water issues with the exterior stucco on the subject development which needs to be redone due to the age of the subject development.

Although comparables #1 and #2 are both significantly inferior to the subject in terms of their gross living area, they were utilized since they were the two most recent sales in the subject development in the 2011 and the 2012 marketplace. When analyzed on a price per s/f basis, these two comparables sold for $287.29 and $329.41 respectively. When adjusted for their salient differences to the subject, they are considered among the best data available.

The adjustments to the sales reflect the following:

**Common Amenities:**
Adjustment to comparable #3, applied at a flat factor of +$10,000, reflects the subject development's superior amenities.

**Design (style):**
Adjustment to comparable #1 and comparable #2, applied at +5%, reflects the subject's superior "duplex" style appeal as compared to these two comparables which are "simplex" style units. Adjustment to comparable #3, applied at -5%, reflects its superior "townhouse" style appeal (i.e. this comparable is a townhouse and does not have any other units above or below it).

**Quality of Construction:**
Adjustment to comparable #3, applied at -5%, reflects its superior full brick exterior and higher quality interior craftsmanship.

**Condition:**
Adjustment to comparable #3 applied at -5% since it is measurably younger than the subject.

**Room Count:**
Adjustments taken at $15,000 per full bath. Bedroom differentials were adjusted for under functional utility and applied at $25,000 per bedroom.

**Gross Living Area:**
Adjustment to the comparables applied at $150 per s/f as suggested by market data in the area. The shortage of adequate recent comparables which were similar in gross living area to the subject required the use of all comparables which were inferior to the subject in terms of their gross living area. Research revealed that the subject's room count and gross living area were "in-line" with other condominiums in the Edgewater marketplace and more specifically in the subject development; however, none were available for comparison

When reconciling the subject's final estimate of value, all sales were considered.

To properly adjust the comparables to the subject, it was necessary to exceed the recommended Fannie Mae10% line, 15% net and 25% gross adjustment guidelines. All the adjustments utilized were derived from market data in the area and are considered reasonable and indicative of market reaction in the area.

### ADDITIONAL MARKET DATA CONSIDERED

The appraiser searched the New Jersey MLS as well as the deed recordings for all sales in the subject development in the 2010, 2011, and the 2012 marketplace. This search revealed that there had been a total of only four sales reported through the New Jersey MLS. Two of these four sales have been utilized in this appraisal report as comparables #1 and #2. The two additional MLS sales (which were not utilized) in the subject development as follows:

| Unit # | Sale Price | Sale Date | Sq.Ft. | Room Count | Comments |
|---|---|---|---|---|---|
| #1A | $ 596,000 | 08/02/2010 | 1,674 s/f+/- | 5-2-2 | Closed back in 2010 |
| #8A | $ 575,000 | 02/05/2010 | 1,674 s/f+/- | 5-2-2 | Closed back in 2010 |

These two sales were not utilized since they closed back in the 2010 marketplace and were both measurably inferior to the subject in terms of their gross living area. They have been mentioned for informational and completeness purposes only.

## Supplemental Addendum

File No. L12846

| Borrower/Client | Gael, William M. | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1225 River Rd #4D | | | | | |
| City | Edgewater | County | Bergen | State | NJ | Zip Code | 07020-1459 |
| Lender | Hudson City Savings Bank | | | | | |

### ADDITIONAL COMMENTS REGARDING CERTIFICATION NO. 23 - AS ACCEPTED BY FANNIE MAE

The intended user of this appraisal report is the Lender/Client. The intended use is to evaluate the property that is the subject of this appraisal report for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. No additional users are identified by the appraiser.

This statement supersedes all other found on the form.

### ETHICS RULE - PREVIOUS SERVICES

The appraiser does not have any current or prospective interest in the subject property or parties involved and has not provided any services regarding the subject property within the three year period immediately preceding acceptance of the assignment, as an appraiser or in any other capacity.

### EXPOSURE TIME

A reasonable exposure time for the subject property at the opinion of value indicated is estimated to be between 180 to 365 days and was derived using a review of MLS sales data and statistics in the area.

**Aerial Map**

| Borrower/Client | Gael, William M |  |  |  |  |  |
|---|---|---|---|---|---|---|
| Property Address | 1225 River Rd #4D |  |  |  |  |  |
| City | Edgewater | County | Bergen | State | NJ | Zip Code 07020-1459 |
| Lender | Hudson City Savings Bank |  |  |  |  |  |



## Flood Map

| Borrower/Client | Gael, William M. | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1225 River Rd #4D | | | | | | |
| City | Edgewater | County | Bergen | State | NJ | Zip Code | 07020-1459 |
| Lender | Hudson City Savings Bank | | | | | | |



## Location Map

| Borrower/Client | Gael, William M | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1225 River Rd #4D | | | | | |
| City | Edgewater | County | Bergen | State | NJ | Zip Code | 07020-1459 |
| Lender | Hudson City Savings Bank | | | | | |



Form MAP.LOC — "TOTAL 2011" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Subject Photo Page**

| Borrower/Client | Gaer, William M. | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1225 River Rd #4D | | | | | |
| City | Edgewater | County | Bergen | State | NJ | Zip Code 07020-1459 |
| Lender | Hudson City Savings Bank | | | | | |



**Subject Front**

| | |
|---|---|
| 1225 River Rd #4D | |
| Sale price: | N/A |
| Gross Living Area: | 4,000 |
| Total Rooms: | 6 |
| Number Bedrooms: | 2 |
| Number Baths: | 2.5 |
| Location: | Avg-Good |
| View: | Good |
| Lot Size: | Common land |
| Quality: | Avg-Good |
| Age: | 28 yrs+/- |



**Subject Rear**



**Subject Street**

Form PIC3x5 SR - "TOTAL 2011" appraisal software by a la mode, inc. - 1-800-ALAMODE

## PHOTOGRAPH ADDENDUM

| Borrower/Client | Gael, William M | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1225 River Rd #4D | | | | | |
| City | Edgewater | County | Bergen | State | NJ | Zip Code 07020-1459 |
| Lender | Hudson City Savings Bank | | | | | |



NORTHEASTERLY VIEWS OF THE
GEORGE WASHINGTON BRIDGE,
UPPER MANHATTAN SKYLINE,
AND THE HUDSON RIVER

PHOTO TAKEN FROM THE FRONT
OF THE SUBJECT UNIT



EASTERLY VIEWS OF THE
UPPER MANHATTAN SKYLINE,
AND THE HUDSON RIVER

PHOTO TAKEN FROM THE FRONT
OF THE SUBJECT UNIT



SOUTHEASTERLY VIEWS OF THE
UPPER MANHATTAN SKYLINE,
AND THE HUDSON RIVER

PHOTO TAKEN FROM THE FRONT
OF THE SUBJECT UNIT

## Comparable Photo Page

| Borrower/Client | Gael, William M | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1225 River Rd #4D | | | | | |
| City | Edgewater | County | Bergen | State | NJ | Zip Code 07020-1459 |
| Lender | Hudson City Savings Bank | | | | | |



### Comparable 1
1225 River Rd #13A

| Prox. to Subject | Same development |
|---|---|
| Sale Price: | 689,500 |
| Square Footage: | 2,400 |
| Total Rooms: | 5 |
| Number Bedrooms: | 2 |
| Number Baths: | 2.5 |
| Location: | Similar |
| Condition: | Similar |
| Lot Size: | Common land |
| Quality: | Avg-Good |
| Age: | 23 yrs+/- |



### Comparable 2
1225 River Rd #1A

| Prox. to Subject | Same development |
|---|---|
| Sale Price: | 560,000 |
| Square Footage: | 1,700 |
| Total Rooms: | 5 |
| Number Bedrooms: | 2 |
| Number Baths: | 2.5 |
| Location: | Similar |
| Condition: | Similar |
| Lot Size: | Common land |
| Quality: | Avg-Good |
| Age: | 28 yrs+/- |

### Comparable 3
10 Moorings Ln

| Prox. to Subject | 0.20 miles NE |
|---|---|
| Sale Price: | 950,000 |
| Square Footage: | 3,341 |
| Total Rooms: | 7 |
| Number Bedrooms: | 3 |
| Number Baths: | 3.5 |
| Location: | Similar |
| Condition: | Similar |
| Lot Size: | Common land |
| Quality: | Superior    -5% |
| Age: | 1 yr Eff new |

Form PIC3x5.CR - "TOTAL 2011" appraisal software by a la mode, inc. - 1-800-ALAMODE